## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

JOHN M. SINGLETON, ET AL. : CIVIL ACTION NO. 2:21-CV-03264

VERSUS : JUDGE JAMES D. CAIN, JR.

APACHE CORP (OF DELAWARE), ET AL.: MAGISTRATE JUDGE KAY

### <u>REPORT AND RECOMMENDATION</u>

Before the court is a Motion to Remand filed by John M. Singleton and Kevin Singleton ("plaintiffs"). Doc. 15. The motion is opposed by defendants BP America Production Company ("BP America"), Apache Corporation, and Wagner Oil Company (collectively, "Removing Defendants"). Doc. 19. The motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

For the reasons stated **IT IS RECOMMENDED** that the motion be **DENIED.**

### I.
### BACKGROUND

This case arises from alleged contamination of plaintiffs' property resulting from oil and gas operations. Doc. 1, att. 1, p. 4. These operations first began around 1966. Doc. 15, att. 1, p. 5. As part of these operations, eight wells were drilled on plaintiffs' property and are now at issue in this suit. Doc. 1, att. 1, pp. 7 & 29.

### A. *Factual Backdrop of this Case*

Plaintiffs are surface owners of the property at the center of this suit. Plaintiff John Singleton is an owner through a private act of sale from The Banquier Company, Inc.[1] to him and his late wife Margaret Ann Singleton. Doc. 1, att. 5. Plaintiff Kevin Singleton is a surface owner after inheriting a one-third interest in his mother's (Mary Ann Singleton's) estate. Doc. 1, att. 7.

Amoco Production Company ("Amoco")[2] and defendants Apache Corporation and Wagner Oil Company operated and/or used the oil and gas facilities that allegedly caused the contamination of plaintiffs' property. Doc. 1, att. 1, p. 6. Defendant BP America is a "successor in interest by merger, acquisition, or name change" to Amoco, formerly Pan American Petroleum Corporation. *Id.*, p. 5. Defendant Apache Corporation owns the mineral rights to plaintiffs' property and leases the surface of the property.[3] Doc. 19, att. 1, pp. 3–4. Defendant Wagner Oil Company is a former assignee of surface and mineral rights on plaintiffs' property.[4] Doc. 19, att. 1, p. 5. Defendant International Well Testers, Inc. ("IWT"), is a contractor hired by Amoco to sample and close pits in Welsh Field. Doc. 1, att. 1, p. 7; Doc. 15, att. 1, p. 12.

### B. *Procedural Posture*

Plaintiffs filed suit in the 31st Judicial District Court, Parish of Jefferson Davis, State of Louisiana on May 5, 2021. Doc. 1, att. 1, p. 4. In the petition, plaintiffs allege that their property in the vicinity of the Welsh Oil Field within Jefferson Davis Parish ("plaintiffs' property") was contaminated by oil and gas exploration and production activities. *Id.*, p. 5. Plaintiffs generally

---

[1] The Banquier Company bought the surface rights to the land from Amoco through a limited warranty deed dated February 23, 1998. Doc. 1, att. 6.

[2] Amoco, formerly Pan American Petroleum Corporation (which was formerly Stanolind Oil and Gas Company), acquired the surface and mineral rights to plaintiffs' property from Wright Morrow through a cash deed dated July 31, 1935. Doc. 19, att. 1, pp. 2–3, ¶¶ 5–7.

[3] Apache Corporation gained these interests in the property by merging with MW Petroleum, which acquired the interests from Amoco in 1991. *Id.*, pp. 3–4.

[4] Apache Corporation assigned these rights to Wagner Oil Company through an act dated June 29, 2001. *Id.*, p. 5, ¶ 13. Wagner assigned all its rights in plaintiffs' property to Criolla, LP on January 1, 2011. *Id.*, pp. 5–6.

claim that the defendants caused or are legally responsible for this contamination. *Id.*  Additionally, plaintiffs assert that defendants or their representatives engaged in acts including "fraud, ill practices, and misrepresentation . . . designed to hinder, impede or prevent plaintiffs from asserting their causes of action or to lull plaintiffs into a false sense of security." *Id.*, p. 10, ¶ 14.  However, they later narrow this claim to actions by Amoco and Apache Corporation, including hiring IWT in 1987. Doc. 20, p. 6.

Accordingly, plaintiffs bring numerous claims for damages they have allegedly suffered because of this contamination.  First, they allege that defendants are liable for negligence, a continuing tort and a continuing trespass, breach of express contract, breach of implied lease obligations under the Louisiana Civil and Mineral Codes, violations of article 667, and violations of articles 2317 and 2322. Doc. 1, att. 1, pp. 6–23.  Next, plaintiffs claim defendants' liability for punitive damages under former Civil Code article 2315.3 and civil fruits of trespass under article 486. *Id.*, p. 16, ¶ 29 & p. 17, ¶ 32.  Finally, they claim entitlement to damages for unjust enrichment if there is no other adequate remedy at law. *Id.*, p. 18, ¶ 35.  Plaintiffs claim defendants who are assignees or sublessees of the mineral leases are solidarily liable to plaintiffs. *Id.*, p. 15, ¶ 24.

Defendants timely removed the case on September 10, 2021, to this court based on diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1.  In their Notice of Removal, Removing Defendants assert that diversity jurisdiction exists because the amount in controversy exceeds $75,000[5] and because the properly joined parties are of diverse citizenship. *Id.*, p. 5.  Removing Defendants assert that the properly joined parties—plaintiffs, Apache Corporation, BP America, and Wagner Oil Company—are of diverse citizenship. *Id.*, pp. 5–7.[6]  Defendants also assert that IWT's

---

[5] The parties agree that the amount in controversy exceeds $75,000. Doc. 1, pp. 7–9; Doc. 15, att. 1, p. 7.
[6] The parties do not dispute the citizenship of any party.  The citizenships are as follows: Plaintiffs are Louisiana citizens. Doc. 1, p. 5.  Apache Corporation and BP America are citizens of Delaware and Texas (with their places of incorporation in Delaware and principal places of business in Texas). *Id.*, p. 6.  Wagner Oil Company is a citizen of

Louisiana citizenship should not be considered because it was improperly joined. *Id.*, pp. 6–7. Specifically, Removing Defendants allege that there is no possibility of recovery against IWT because plaintiffs failed to state a claim against it. *Id.*, p. 7.

Plaintiffs filed a timely motion to remand. Doc. 15. They contend that this court lacks jurisdiction because the Removing Defendants have failed to carry their burden of showing that the parties are completely diverse. *Id.*, p. 12. Specifically, plaintiffs claim that Removing Defendants have not proven improper joinder but have instead solidified plaintiffs' case against IWT. *Id.*

In opposition to the motion to remand, the Removing Defendants argue that plaintiffs' claims against IWT fail as a matter of law. Doc. 19, p. 7. Specifically, Removing Defendants assert that the negligence claims against IWT are not viable because IWT owed plaintiffs no legally recognized duty. *Id.*, pp. 7–8.

In reply [doc. 20], plaintiffs claim that the existence of a duty in tort law is a merits issue that this court cannot determine without jurisdiction. Doc. 20, pp. 4–5. They go on to remind this court that the applicable analysis must focus on joinder, not the merits of plaintiffs' case. *Id.*, p. 4. Plaintiffs also contend that Removing Defendants' assertion of an affirmative defense to show improper joinder is "not even marginally appropriate" because it requires a factual merits inquiry. *Id.*, p. 5.

Removing Defendants filed a sur-reply in opposition to plaintiffs' motion to remand. Doc. 23. They claim plaintiffs are incorrect to assert that this court cannot consider affirmative defenses as part of the improper joinder analysis. *Id.*, pp. 1–2. They also assert that plaintiffs have failed to

---

Texas (with its principal place of business and place of incorporation both in Texas). *Id.* IWT is a citizen of Louisiana. *Id.*, p. 7.

establish a viable cause of action because they do not allege that IWT was ever an operator or interest holder in any lease covering their property. *Id.*, p. 4.

## II.
### LAW AND ANALYSIS

### A. *Removal Jurisdiction and Improper Joinder Standards*

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and by statute.'" *Gunn v. Minton,* 133 S.Ct. 1059, 1064 (2013) (citing *Kokkonen v. Guardian Life Ins. Co. of America,* 114 S.Ct. 1673, 1675 (1994)). Any civil action brought in a state court of which the district courts have original jurisdiction may be removed to the proper district court. 29 U.S.C. § 1441(a). However, a federal district court must remand the action to state court if it finds that it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The removing party bears the burden of showing that removal was procedurally proper and that federal jurisdiction exists. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

District courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). The diversity provisions of § 1332 require complete diversity among the parties. *Caterpillar Inc. v. Lewis*, 117 S.Ct. 467, 472 (1996).

When determining subject matter jurisdiction, a court may disregard a non-diverse party's citizenship if the party was improperly joined. *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018). If removal is based on a claim that a non-diverse party has been improperly joined, then the removing party must establish either "actual fraud in the pleading of jurisdictional facts" or an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Illinois Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). The party seeking removal based on improper joinder of

a non-diverse defendant bears a "heavy" burden of proving that the joinder was improper. *Id.* at 574. Here, defendants did not allege actual fraud, so only the latter method is relevant. Thus, the pertinent question is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* at 573. The possibility of liability must be "reasonable, not merely theoretical." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). The removal statute is to be strictly construed, and any doubt about the propriety must be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

To determine whether defendants have demonstrated that plaintiffs have "no possibility of recovery" against the non-diverse defendants, the court conducts a "Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 573. When conducting a Rule 12(b)(6)-type analysis, the court examines whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief. *Id.* (citing *Twombly*, 127 S.Ct. 1955).

In the improper joinder context however, the scope of the inquiry may sometimes be broader than that of a 12(b)(6)-type analysis. *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007). While a traditional 12(b)(6) analysis looks only to the complaint, in the improper

joinder inquiry where a plaintiff has "misstated or omitted discrete facts that would determine the propriety of joinder," the court may "pierce the pleadings" and also consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim. *Smallwood*, 385 F.3d at 573; *Campbell*, 509 F.3d at 669.  In doing so, the court must consider all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff. *Travis*, 326 F.3d at 649.  Any contested issues of fact or ambiguities of state law must be resolved in favor of the plaintiff. *Id.*

### B. Application

In their state court petition, plaintiffs allege that the four defendants are liable under multiple theories due to contamination caused by oil and gas exploration, production, and related activities. Doc. 1, att. 1, p. 4.  Plaintiffs contend generally that defendants' "activities," including construction, operation, and abandonment of oil and gas facilities, caused or made defendants legally responsible for the contamination. *Id.*, p. 5.  However, plaintiffs then specify that Amoco, Apache Corporation, and Wagner Oil Company were the ones who operated and used oil and gas facilities and claimed that these activities likely led to contamination commingling. *Id.*, pp. 5–6.

Plaintiffs claim that defendants' failure to remove or remediate this alleged contamination led to permanent damage to the drinking water and other aquifers underlying the Field. *Id.*, p. 9. Plaintiffs assert that defendants or their representatives intentionally engaged in acts including "fraud, ill practices, and misrepresentation . . . designed to hinder, impede or prevent plaintiffs from asserting their causes of action or to lull plaintiffs into a false sense of security." *Id.*, p. 10, ¶ 14.  They later narrow this claim to Amoco and Apache. Doc. 20, p. 6.  Plaintiffs allege all mineral lease assignee- and sublessee-defendants are solidarily liable to plaintiffs. Doc. 1, att. 1, p. 15, ¶ 24.  Against IWT, the only party-specific allegations were that it negligently sampled and closed

pits located on or near plaintiffs' property and negligently certified to regulatory agencies those pits were closed according to applicable laws, statutes, rules, and regulations. *Id.*, pp. 7–8.

"[W]hether the plaintiff has stated a valid state law cause of action depends upon and is tied to the factual fit between the plaintiffs' allegations and the pleaded theory of recovery." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999) (internal citations removed). A plaintiff's inability to make specific factual allegations against a non-diverse defendant is enough to establish improper joinder. *Id.* The state court petition in this matter provides little to no information about the basis for IWT's liability. Therefore, we choose to pierce the pleadings and look to the parties' evidence to determine if IWT was improperly joined.

### 1. Tort Claims

Plaintiffs' tort claims against all four defendants are based on damage from operation of wells, other equipment, and facilities in Welsh Oil Field. However, plaintiffs have presented no facts showing that IWT operated any of those wells, equipment, or facilities. In fact, plaintiffs agree that "'IWT did not permit, drill, or operate'" any of the wells in the petition. Doc. 15, att. 1, p. 11. Thus, plaintiffs have presented no evidence that IWT operated on their property, so the general tort claims in the petition are not plausible claims of relief against IWT.

Plaintiffs assert additional tort claims specifically against IWT. Doc. 1, att. 1, pp. 7–8, ¶ 6. These claims include negligent sampling and closure of pits and negligent certification about the pit closures. Since these are negligence claims, whether IWT owed a duty to plaintiffs is a threshold issue. *Meany v. Meany*, 639 So. 2d 229, 233 (La. 1994). The only duties plaintiffs allege in the petition are "to protect plaintiffs and plaintiffs' Property" from the alleged contamination and pollution. Doc. 1, att. 1, p. 11, ¶ 15. To support this assertion, plaintiffs make general references to company policy, industry practice, custom, the leases and contracts applicable to the

Property, and state regulation. *Id.* However, plaintiffs provide no facts to support these legal allegations.

In addition to this lack of factual support for plaintiffs' claims, Removing Defendants offer a finding by the Eastern District of Louisiana that, in a case with similar allegations against IWT, IWT owed no "recognized legal duty" to the plaintiffs and was "not legally responsible for the closure of pits on plaintiff's property as a matter of Louisiana law." Doc. 19, p. 7 (quoting *Simoneaux v. Jolen Operating Co.*, No. C.A. 04-2467, 2004 WL 2632957, at *1 (E.D. La. Nov. 17, 2004)). Plaintiffs did not rebut Removing Defendants' claim about the lack of duty owed by IWT but instead claimed this court cannot look to the question of duty to decide this motion because it is a merits issue. Doc. 20, p. 4. Plaintiffs misunderstand something: we are not deciding whether IWT owed them a duty; we are determining whether plaintiffs presented sufficient factual matter to state a claim of relief that is plausible on its face. On the question of duty, plaintiffs provided nothing more than legal allegations meant to look like facts. Thus, plaintiffs did not plead sufficient factual matter to state a plausible negligence claim against IWT.

### 2. *Breach of Contract Claims*

Plaintiffs also seek to recover from IWT as beneficiaries of a stipulation pour autrui. Doc. 1, att. 1, pp. 7–8, ¶ 6. In the petition, plaintiffs state that their third-party beneficiary claims are based on the contract for services between IWT and the operator (presumably Amoco). *Id.* The contract for services between Amoco and IWT is not part of the record[7] and no other details about it are given. Thus, there is not sufficient factual matter to determine that plaintiffs' claim to a third-party benefit arising from this contract is plausible on its face.

---

[7] The closest thing to this contract that is part of the record would be IWT's bid for the contract with Amoco. Doc. 1, att. 4, pp. 9–13.

Likewise, plaintiffs' claims to a third-party benefit against all defendants has insufficient factual support to state a claim against IWT.  Both parties acknowledge that IWT was a contractor and never an interest holder in any lease on plaintiffs' property.  Thus, a stipulation pour autrui in these leases would not give plaintiffs a reasonable possibility of recovery against IWT.

Furthermore, since IWT was not a party to these leases and plaintiffs have not sufficiently shown that they are third-party beneficiaries to the contract for services between IWT and Amoco, plaintiffs' claims against the defendants for breach of contractual or lease obligations under the Louisiana Civil and Mineral Codes do not give plaintiffs a reasonable possibility of recovery against IWT.  Accordingly, there is not enough factual matter available to state a contract-based claim of relief against IWT that is plausible on its face.

*3.  Solidary Liability Claims*

Plaintiffs' claims of solidary liability among defendants are based on obligations rooted in mineral and surface leases. Doc. 1, att. 1, p. 15, ¶ 24.  As already established, IWT, a contractor, was never a party to or interest holder in these leases.  Thus, plaintiffs' subsequent claim that all defendants are liable in solido is not plausible as to IWT since this claim is based on obligations under leases that do not encompass IWT.

**III.**
**CONCLUSION**

For the reasons stated, **IT IS RECOMMENDED** that the Motion to Remand [Doc. 15] be **DENIED** and that non-diverse defendant **INTERNATIONAL WELL TESTERS, INC.** be dismissed from this action without prejudice

Under the provisions of 28 U.S.C. §636 and Rule 72 of the Federal Rules of Civil Procedure, parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. A party may respond to another party's objections

within fourteen (14) days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglas v. United Services Automobile Ass'n,* 79 F.3d 1415, 1429-30 (5th Cir.1996).

THUS DONE AND SIGNED in Chambers this 14th day of September, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE